STATE of South Dakota, Plaintiff
and Appellee,

v.

John Eldon BONRUD, Defendant
and Appellant.

No. 14904.

Supreme Court of South Dakota.

Oct. 1, 1986.

Sherri L. Sundem, Asst. Atty. Gen., Mark V. Meierhenry, Atty. Gen., on brief, Pierre, for plaintiff and appellee.

Michael J. McGill, Beresford, for defendant and appellant.

MORGAN, Justice.

Defendant John Eldon Bonrud (Bonrud) was found guilty of robbery in the first degree by a Lincoln County Jury in January of 1985. Following the jury trial, Bonrud appeared before the trial judge for arraignment on an information which charged him with being a habitual offender. Bonrud pled guilty to this information. On that same date, the trial court sentenced Bonrud to forty-five years in the South Dakota State Penitentiary. It is from this conviction and sentence that Bonrud now appeals. We affirm.

On August 15, 1984, Max Olson (Olson) a disabled Canton, South Dakota resident was sitting in front of a drive-in. Olson was distributing religious pamphlets and putting any money donations he received from their sale into a small red box. Amy Scholle (Scholle), an employee of the drive-in, was working that evening. She testified she was preparing an order when she heard a car pull up and then heard two people talking with Olson. Subsequently, Scholle's full attention was diverted to Olson when she heard him start to yell. At that time, she looked out the window and saw one individual grab Olson's hands and another individual take Olson's money box.

Scholle ran into the dining room and called out: "Somebody call the police because they are robbing Max." At that point, Howard and Wayne Beer left the dining room. Howard testified at the preliminary hearing and at trial that he observed two men running away from Olson with one carrying the money box. Howard yelled for the men to stop, but neither did. Howard and Wayne then jumped into their pickup and chased the two men. Eventually, Howard and Wayne caught up with the perpetrators' vehicle and ran them off the road. Bonrud, who was later identified as the one who grabbed Olson's money box

and his accomplice were detained by Howard and Wayne until the Lincoln County Sheriff arrived. Upon the sheriff's arrival, Howard explained that Bonrud and his accomplice had just robbed Olson of his money box. Bonrud was then taken into custody by the sheriff. The sheriff proceeded to search the vehicle Bonrud was riding in and gathered some money and the money box from the vehicle. Bonrud was subsequently indicted and convicted as noted above. Any further facts will be recited where pertinent.

As his first assignment of error, Bonrud claims that the trial court committed prejudical error in admitting evidence gained by virtue of an illegal citizen's arrest. Specifically, Bonrud claims that Howard did not observe the taking of the property from Olson, nor did he have the requisite probable cause to make a valid arrest. As a result, Bonrud claims any evidence seized after this alleged illegal arrest should be suppressed.

Bonrud claims there is no evidence in the record that would give Howard specific facts on which to base a reasonable suspicion that a felony had occurred. During the hearing on the suppression motion, Bonrud's attorney stated: "[W]e are essentially saying that Howard Beer as a private citizen did not have the legal authority to effect an arrest...." The trial court, in its order denying suppression, stated: "The court ... specifically finds that Howard Beer did have probable cause to make a warrantless arrest based upon the facts and circumstances he previously observed as set forth in the transcript of the preliminary hearing page 38, lines 6 thru 24, inclusive." The testimony the trial court referred to included the statements we have previously noted.

We first examine the question of the validity of Bonrud's arrest. Two statutes are pertinent to the validity of a citizen's arrest. SDCL 23A-3-3 specifies that: "Any person may arrest another: (1) For a public offense, other than a petty offense, committed or attempted in his presence; or

(2) For a felony which has been in fact committed although not in his presence, if he has probable cause to believe the person to be arrested committed it." SDCL 23A–4–1 directs that any person making such an arrest shall, without unnecessary delay, take the arrested person before a committing magistrate or deliver the arrested person to the nearest available law enforcement officer.

■ As we read Bonrud's argument, he is saying that Howard had to make an articulable judgment that Bonrud had committed a felony outside of his presence before he could validly intervene. This spurious line of reasoning would require a citizen to have more legal expertise than some law enforcement officials. We hold that without a doubt, the trial court was correct that there was a valid citizen's arrest. Howard heard Scholle's outcry that Olson was being robbed and observed Bonrud fleeing the scene with Olson's box in hand. These events combined to give him probable cause to believe that an offense was being committed. We do not believe that the exact degree of seriousness of the offense is, at that time, essential to the validity of the arrest, nor does Bonrud cite us to any authority to the contrary.

We next examine the question whether or not the evidence should have been suppressed. We hold that the trial court was correct in denying the motion to suppress the evidence. Bonrud clearly misunderstands the protections of the Fourth Amendment. He builds his argument for suppression on the erroneous belief that the Fourth Amendment provides protection against search and seizure by private individuals. The entire theory and justification behind the suppression of evidence is deterrence of *governmental* misconduct. In *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the United States Supreme Court emphasized the distinction as follows:

The exclusionary rules were fashioned 'to prevent, not to repair,' and their target is official misconduct. They are to 'compel respect for the constitutional

guaranty in the only effectively available way—by removing the incentive to disregard it.' [citation omitted] But it is no part of the policy underlying the Fourth and Fourteenth Amendments to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals. If, then, the exclusionary rule is properly applicable ... it must be upon the basis that some type of unconstitutional police conduct occurred.

403 U.S. at 488, 91 S.Ct. at 2049, 29 L.Ed.2d at 595–96.

Although Bonrud does not point us to any state action that may be proscribed by the Fourth Amendment, a review of the record shows us that there was state action involved in the searching of the vehicle in which Bonrud was riding. The sheriff conducted the search and this clearly constitutes governmental conduct; therefore, it must be given Fourth Amendment scrutiny. Although appellant does not challenge the constitutionality of the search *per se,* we may raise constitutional issues *sua sponte. Bayer v. Johnson,* 349 N.W.2d 447 (S.D.1984). The warrantless search of Bonrud's vehicle would be unconstitutional unless the search falls within a recognized exception to the general rule requiring a search warrant. In *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 775 (1981), the Supreme Court held: "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *See State v. Rice,* 327 N.W.2d 128 (S.D. 1982).

■ The record does not specifically reflect that the sheriff, on his own part arrested Bonrud, but it clearly shows that he took him into custody. In any event, he was validly arrested and in custody when the sheriff searched the vehicle. We recognize that the *Belton* decision speaks specifically to the situation where a *policeman* makes a lawful arrest and conducts a contemporaneous search. We find no important distinction that would prevent us from

applying *Belton* to the situation here where the citizen makes the lawful arrest and the sheriff conducts a contemporaneous search. *See Moll v. United States,* 413 F.2d 1233 (5th Cir.1969).

We therefore determine that the sheriff made a valid search of Bonrud's vehicle and the trial court correctly denied suppression of the evidence.

■ Bonrud also raises a procedural issue with respect to the suppression motion. He asserts that the trial court committed prejudicial error in admitting the evidence because the order admitting the evidence was not supported by findings of fact and conclusions of law. For this assertion, he relies on SDCL 23A–8–8 which states, in pertinent part: "Where factual issues are involved in determining a motion [to suppress evidence, SDCL 23A–8–3], the court shall state its essential findings on the record."

In *State v. Holiday,* 335 N.W.2d 332 (S.D.1983), we discussed this statutory requirement in the context of a motion to suppress identification evidence upon the basis of an improper photo lineup. We therein held that the trial court may verbally enter on the record at the motion hearing the findings of fact and conclusions of law upon which it bases its opinion. We suggested, however, that the exercise of entering written findings and conclusions would more likely insure against speculation or conjecture. *See also State v. Hartley,* 326 N.W.2d 226 (S.D.1982). We take this occasion to reiterate our previous admonitions.

As previously noted, the trial court in its order denying suppression stated its findings. We conclude that its incorporation of the protion of the transcript as findings of fact, while not preferable, is sufficient and we determine the order adequately sets out the trial court's findings. We reject Bonrud's contention that the evidence surrounding his arrest should have been suppressed.

■ Bonrud next contends that SDCL ch. 22–30, the robbery chapter, is unconstitutional in that it is violative of his substantive due process rights. Specifically, he claims that the statutory scheme does not define with specificity and definiteness what degree of installation of fear in the victim is required for first-degree robbery as distinguished from second-degree robbery.

SDCL 22–30–1 defines robbery as "the intentional taking of personal property, regardless of value, in the possession of another from his person or immediate presence, and against his will, accomplished by means of force or fear, unless the property is taken pursuant to process or otherwise pursuant to law." SDCL 22–30–6 states: "Robbery when accomplished by the use of force or by putting the person robbed in fear of some immediate injury to his person is robbery in the first degree. When accomplished in any other manner, it is robbery in the second degree." One who attacks the statute alleging unconstitutionality must prove its invalidity beyond a reasonable doubt. *County of Tripp v. State,* 264 N.W.2d 213 (S.D.1978). Bonrud has not proved unconstitutionality by this standard.

'A crime must be statutorily defined with definiteness and certainty. A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process. A criminal statute must give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden.'

*State v. Big Head,* 363 N.W.2d 556, 559 (S.D.1985) (quoting *State v. Primeaux,* 328 N.W.2d 256, 258 (S.D.1982).

Bonrud has previously challenged the constitutionality of SDCL ch. 22–30. *State v. Bonrud,* 90 S.D. 185, 240 N.W.2d 77 (1976). In that case, this court held that "[w]e fail to find in this wording [SDCL 22–30–6] any plausible degree of ambiguity or uncertainty. The challenge to the statute is without merit." *Bonrud,* 90 S.D. at

191, 240 N.W.2d at 80. We decline to recede from our previous holding.

Bonrud next argues that the trial court improperly denied his motion for a judgment of acquittal on Count I of the indictment. Count I alleged the taking by means of force. In considering a motion for acquittal the trial court must consider the evidence in the light most favorable to the nonmoving party and must give the nonmoving party the benefit of all reasonable inferences in its favor. *See State v. Bult*, 351 N.W.2d 731 (S.D.1984). "A motion for judgment of acquittal is properly denied if the state has introduced evidence from which, if believed, the jury may reasonably find the defendant guilty of the crime charged." *Bult*, 351 N.W.2d at 734. *See State v. Blakey*, 332 N.W.2d 729 (S.D. 1983); *State v. Decker*, 317 N.W.2d 138 (S.D.1982); *State v. Miller*, 313 N.W.2d 460 (S.D.1981); *State v. Bates*, 76 S.D. 23, 71 N.W.2d 641 (1955). There was ample evidence from which the jury could reasonably find Bonrud guilty. Thus, the motion for judgment of acquittal was properly denied.

Bonrud also contends that the trial court erred in denying his motion for judgment of acquittal on Count II of the indictment. Count II alleged robbery by means of fear. It should be noted here that Bonrud was convicted only on Count I, a taking by force. Since Bonrud was not convicted on this count, he has no basis for appeal. *See State v. Davis*, 77 S.D. 87, 86 N.W.2d 174 (1957). *See also* SDCL 15–26A–3; *State v. Nuwi Nini*, 262 N.W.2d 758 (S.D.1978).

Bonrud also argues that the trial court committed error by refusing to instruct the jury on the elements of petty theft in the second degree. The trial court provided the jury with instructions on the elements of first degree robbery accomplished by means of force, first-degree robbery accomplished by means of fear, second-degree robbery and grand theft. Essentially, Bonrud claims that petty theft is a lesser included offense of robbery in the first degree.

Bonrud requested the following instruction:

The essential elements of the offense of petty theft in the second degree which is a lesser included offense of the offenses charged in the information, each of which the state must prove beyond a reasonable doubt, are:

(1) That the Defendant at the time and place alleged in the information, took a green [*] tool box and its contents.

(2) That the green tool box and contents were the property of Max Olson.

(3) That the Defendant took the green tool box and its contents with intent to deprive the owner thereof.

(4) That the property had a value of less than $100.

This court has adopted a two-part test for determining whether an offense is necessarily included within a greater offense and whether the requested instruction on a lesser offense must be given. *State v. Waff*, 373 N.W.2d 18 (S.D.1985). This two-part test contains both a legal element and a factual element. The legal test states three conditions:

'[F]irst, the elements of the included offense must be fewer in number than the elements of the greater charged offense. Second, the penalty for the included offense must be less than the greater charged offense in terms of the maximum punishment attached to each offense. Third, ... the two offenses must contain common elements so that the lesser included offense must be such that the greater offense cannot be committed without also committing the lesser.'

*Waff*, 373 N.W.2d at 22 (quoting *State v. Kafka*, 264 N.W.2d 702, 705 (S.D.1978) (Zastrow, J., concurring specially)) (brackets in original).

The factual element, which must also be satisfied, was stated as:

' "Where a request has been made to charge the jury on a lesser-included offense, the duty of the trial judge is determined by the evidence. If evidence has

---

* The true color of the box apparently was red.

been presented which would support a conviction of a lesser charge, refusal to give the requested instruction would be reversible error. (citation omitted) There must be sufficient evidence, however, when read in the light most favorable to the defendant, which would justify a jury in concluding that the greater offense was not committed and that a lesser offense was, in fact, committed." ' *Id.* at 22 (quoting *Kafka,* 264 N.W.2d at 706 (Zastrow, J., concurring specially)).

We examine the factual element because Bonrud contends that it has been met "because there is a factual question as to whether force or fear was used to take the property from the person or immediate presence of [Max] and also the State's only eyewitness is also subject to attack on the grounds of competency and credibility and ability to physically see what she testified that she saw." We think that Bonrud has missed the mark.

Bonrud urges that the trial court was completely foreclosing the jury's consideration of his basic contention that Scholle could not physically have seen the things with respect to the box as based on her own testimony setting the physical scene.

■ In *Waff, supra,* the legal and factual tests as set out above were quoted from the special concurrence of Justice Zastrow in *State v. Kafka,* 264 N.W.2d 702, 705 (S.D.1978). In commenting on the factual test, Justice Zastrow went on to say: ' "* * * There is no evidence tending to support a lesser included offense *unless a question of fact exists* with regard to an element of the greater offense that is not an element of the included offense (citations omitted)." ' *Id.* at 706 (quoting *People v. Gardner,* 43 Mich.App. 574, 576, 204 N.W.2d 272, 273 (1972)) (emphasis in original). And more particularly, with reference to Bonrud's contention, he said: ' "When does a question of fact exist? *If there is conflicting evidence relating to the element of the greater offense that is not an element of the lesser offense, there is a question of fact as to that element."* ' *Kafka,* 264 N.W.2d at 706 (quoting *Gard-*

*ner,* 43 Mich.App. at 576, 204 N.W.2d at 273 (1972)) (emphasis in original). As in *Gardner,* the present case failed to reveal *conflicting evidence* upon the elements of the crime charged. In fact, the defense put in no evidence whatever. Bonrud confuses cross-examination and jury argument with evidence. Were we to hold otherwise, artful counsel in almost every case would be able, by reason of cross-examination and argument, to require the trial court to give a lesser included offense instruction. We do not believe that this was the reasoning behind our previous holdings. Reading the record in a light favorable to Bonrud, there is no evidence to support the giving of an instruction on petty theft. All evidence in this scanty record pointed to the taking by force from Olson's person of his money box and money. The trial court correctly gave an instruction on grand theft which contains the taking of property from another without force or fear. There was no evidence to support the giving of an instruction on petty theft.

Bonrud further argues that Count II of the indictment should have been dismissed because it alleged that he committed the crime by more than one specified means. As previously noted, inasmuch as he was acquitted on Count II, he has no standing to appeal.

■ As his seventh issue, Bonrud claims the trial court erred in denying his motion for a change of venue. Specifically, Bonrud claims that two small news stories in the Sioux Valley News provided such an air of prejudicial publicity that he was unable to obtain a fair trial in Lincoln County.

SDCL 23A–17–5 provides:

A court upon motion of a defendant shall transfer his proceedings to another county if the court is satisfied there exists, in the county where the prosecution is pending, so great a prejudice against the defendant that he cannot obtain a fair and impartial trial at any place fixed by law for holding court in that county.

Whether the change in venue should be granted is committed to the court's discre-

tion in the trial court's ruling will not be disturbed unless there has been an abuse of discretion. *See State v. Kingston,* 84 S.D. 578, 174 N.W.2d 636 (1970).

The proper test to be used in determining whether a motion for change of venue shall be granted is "whether there is, in fact, prejudice in the minds of the county residents sufficient to raise a reasonable apprehension that the accused will not receive a fair and impartial trial in the county." *State v. Wellner,* 318 N.W.2d 324, 330–31 (S.D.1982). Qualified jurors need not be ignorant of facts and issues surrounding the case and the existence of pretrial publicity alone is not enough to deny the defendant a fair trial. *Wellner, supra.*

As this court noted in *State v. Reutter,* 374 N.W.2d 617, 629 (S.D.1985), "the voir dire examination is the better forum for ascertaining the existence of hostility towards the accused." In essence, Bonrud has failed to make the showing necessary to require reversal.

Along these lines, Bonrud urges the court to adopt a "quasi inherent prejudice" theory which would require reversal of a conviction if there was evidence of pervasive community bias even absent a showing of a clear nexus between community bias and jury bias. *See Pamplin v. Mason,* 364 F.2d 1 (5th Cir.1966); *United States v. Denno,* 313 F.2d 364 (2d Cir.1963), *cert. denied,* 372 U.S. 978, 83 S.Ct. 1112, 10 L.Ed.2d 143. This argument is without merit as this court has explicitly rejected this theory in *State v. Means,* 268 N.W.2d 802 (S.D.1978). Even if the court were to reverse itself on the *Means,* decision, Bonrud's case does not present the arena in which to do so.

■ In another argument dealing with prejudice of the community, Bonrud claims the trial court erred in failing to appoint a county funded investigator to conduct an attitudinal survey of the community. The refusal of the trial court to grant the motion for a public opinion survey rests within the sound discretion of the trial court. *State v. Marshall,* 264 N.W.2d 911 (S.D. 1978). Due to the fact that there were only two newspaper articles published, we cannot say that the attitudes of the community were such that the judge abused his discretion in failing to appoint a private investigator to ascertain those attitudes.

■ Bonrud also claims error since the trial court permitted the State to amend the original habitual offender information. Along with the indictment in October of 1984, State filed a Part II information for habitual offender pursuant to SDCL 22–7–8. This statute provides for an enhancement of sentence to a Class I felony when an individual has been convicted of three or more felonies in addition to the principal felony. Following trial, Bonrud made a motion to dismiss the habitual offender information on the basis that two of the underlying felonies were concluded with guilty pleas and such pleas were not supported with an affirmative showing on the record that they were given intelligently and voluntarily. In reviewing the transcripts surrounding these underlying felonies, it was apparent that Bonrud's claim was correct. Therefore, State filed a motion to amend the Part II habitual offender information by proceeding under SDCL 22–7–7. This statute provides for the enhancement of a sentence to the next most severe class when the defendant has been convicted of one prior felony conviction. In ruling on these cross motions, the trial court concluded that Bonrud failed to show any prejudice to him by the amendment of the State's information and refused to dismiss the information and allowed the State to amend.

SDCL 22–7–11 states, in part: "An allegation that a defendant is an habitual criminal must be filed as a separate information at the time of, or before, his or her arraignment." Normally, this court has held that provisions of the habitual information chapter are to be strictly construed and complied with. *See State v. Layton,* 337 N.W.2d 809 (S.D.1983); *State v. Alexander,* 313 N.W.2d 33 (S.D.1981). An exception exists, however, in that an amendment will be allowed if the defendant is not prejudiced thereby. *State v. Grooms,* 339

N.W.2d 318 (S.D.1983); *State v. Garritsen*, 302 N.W.2d 409 (S.D.1981).

Bonrud claims that he was prejudiced by the late amendment to the information in that his trial tactics may have changed had he known that State would be proceeding on the habitual offender information under SDCL 22-7-7. More specifically, he argued that since he was facing enhancement to a Class I felony he did not try to prove that what he should be convicted of was grand theft. In essence, what Bonrud is trying to do is manufacture some prejudice. The trial court found his argument incredible, as do we. Prejudice simply does not exist because under either SDCL 22-7-7 or -8 his sentence under the habitual offender information would be enhanced to a Class I felony sentence.

Finally, in his last issue, Bonrud contends that the forty-five year sentence imposed on him was cruel and unusual and thereby violated the Eighth Amendment to the United States Constitution.

We first note that first-degree robbery which Bonrud was convicted of, is classified as a Class 2 felony. The application of SDCL 22-7-7, however, enhances the punishment authorized to that of a Class 1 felony, which punishment is a maximum of life imprisonment and a $25,000 fine.

■ Bonrud suggests that forty-five years was too much of a penalty where the loot only amounted to $12 and only a minimal amount of force was necessary to wrest the tin box from the crippled victim. He likens his action more to "purse snatching" than to "armed robbery." We have little sympathy with such vacuous reasoning.

In *State v. Weiker*, 366 N.W.2d 823 (S.D. 1985), we established our method of review of sentencing issues. We acknowledge that "a criminal sentence must be proportionate to the crime for which the defendant has been convicted." *Solem v. Helm*, 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637, 649 (1983). "But no penalty is *per se* constitutional." *Id.* at 290, 103 S.Ct. at 3009–10, 77 L.Ed.2d at 649. We also acknowledge that great deference is given to the sentencing court. *Weiker*, 366 N.W.2d at 828. In *Weiker*, we declined to engage in an exhaustive review simply because appellant claimed his sentence was unconstitutional. "We will first determine whether a sentence 'shocks the conscience;' [citations omitted] or is so disproportionate to the crime so as to activate the Eighth Amendment 'within and without the jurisdiction' of proportionality tests enunciated in *Helm, supra.*" *Weiker*, 366 N.W.2d at 827. It is only "[i]f a sentence is manifestly disproportionate to the crime, ... [that] the other two factors listed in *Helm* [the sentences imposed on other criminals in the same jurisdiction and the sentences imposed for commission of the same offense in other jurisdictions] become more focused and require extensive review." *Weiker*, 366 N.W.2d at 827. In reviewing Weiker's sentence, we further noted that relevant to the discussion of the sentence is the nature of the current convictions and of the prior offenses.

In his brief, Bonrud assumes that the forty-five-year sentence meets the threshold test. We do not agree. His argument that the sentence imposed should be tempered by the paucity of the loot achieved is not supported by any authority nor by common sense. For all we know, Bonrud could well have imagined that the tin box contained a considerably greater sum. Bonrud further suggests that his sentence was too harsh based on the amount of force necessary in the robbery. If the victim had been blind as well as crippled, Bonrud would probably have expected a medal. We find no merit in this contention.

We acknowledge that a forty-five-year sentence for first-degree robbery is a stiff sentence, but considering the circumstances involved in the commission of this particular offense we cannot say that the sentence shocks our conscience nor do we find it to be so disproportionate to the crime as to activate the proportionality tests. The offense charged was heinous and Bonrud's prior record indicates that he has engaged in a lifetime of crime, having been incarcerated in the state penitentiary on at least

three prior occasions. The trial court noted it had not seen such a record for some time in its court. In our opinion, the sentence is not unconstitutionally flawed.

We affirm the conviction and sentence.

WUEST, C.J., HENDERSON and FOSHEIM, JJ., and DUNN, Retired Justice, concur.

DUNN, Retired Justice, sitting for HERTZ, Circuit Judge, acting as a Supreme Court Justice, disqualified.

SABERS, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.