STATE of South Dakota, Plaintiff and Appellee,

v.

Michael D. HOLLOWAY, Defendant and Appellant.

No. 17169.

Supreme Court of South Dakota.

Argued Dec. 3, 1991.

Decided March 11, 1992.

tially outweighs its prejudicial effect[.]

Craig M. Eichstadt, Deputy Atty. Gen., Pierre, Mark Barnett, Atty. Gen., on brief, for plaintiff and appellee.

Julie Irvine, Public Defender's Office, Sioux Falls, for defendant and appellant.

AMUNDSON, Justice.

Michael Holloway (Holloway) appeals from trial court's judgment and sentence based upon a jury verdict that he was guilty of manslaughter in the first degree and robbery in the first degree. We affirm.

## FACTS

The incident which gives rise to this appeal occurred on August 25 and 26, 1989, in Sioux Falls, South Dakota. Holloway was eighteen years old with a history of alcohol abuse. Testimony disclosed Holloway spent the late afternoon and early evening of August 25, drinking beer and whiskey with several adult relatives and friends at his uncle's house. Then, at about 10:30 p.m., Holloway went with relatives to the Frontier Bar where he continued to drink beer. Holloway remained in the downtown

Sioux Falls area until approximately 2 a.m. on August 26, during which time he consumed numerous alcoholic beverages in bars and also smoked marijuana with a friend. Holloway stated that he did not remember many of the evening's events.

The evidence at time of trial showed that the decedent, Olin Aune (Aune), who also had a history of alcohol abuse, spent the afternoon and evening of August 25, consuming numerous alcoholic beverages. Aune went to several downtown bars that evening and was refused service at the Rainbow Bar, and eventually was kicked out because of disruptive behavior.

After the bars closed, Holloway testified he began walking back toward his uncle's house by way of a short cut behind a downtown building when Aune began yelling angrily while approaching Holloway, then pursued him into an area behind the building. The evidence presented at time of trial was that both Holloway and Aune were armed with knives. Next, a struggle ensued between them, in which Aune was stabbed and killed. Holloway remembered removing Aune's wallet and other property from the victim's pockets. After the incident, Holloway returned to his uncle's house and went to bed. The victim's body was not discovered until August 28. On August 30, Holloway's mother and sister discovered the victim's wallet and Holloway's bloody jeans in the camper where he had been staying. Holloway, though not remembering many of the events which occurred on August 25 and 26, believed he was responsible and turned himself in to the police.

Holloway was tried in March, 1990. The jury returned a verdict of guilty of first-degree manslaughter and first-degree robbery, but not guilty of premeditated murder and felony murder. The judge sentenced him to one hundred twenty-one years on the manslaughter conviction, and twenty-five years on the robbery conviction to be served consecutively, for a total of one hundred forty-six years. Holloway moved for reconsideration of the sentence, which was denied by the trial court. This appeal followed.

## ISSUES

1. Whether it was plain error not to instruct the jury on grand theft from the person as a necessarily included offense of robbery?

2. Whether it was plain error for the trial court to instruct on manslaughter in the first degree as a lesser included offense of murder?

3. Whether the trial court erred in refusing to instruct the jury on justifiable homicide?

4. Whether the sentence imposed by the trial court was cruel and unusual punishment in violation of the Eighth Amendment?

## ANALYSIS

1) *Grand Theft Instruction*

Holloway was indicted for robbery in the first degree pursuant to SDCL 22–30–1 and 22–30–6.[1] He argues that the trial court should have instructed the jury on grand theft as a necessarily included offense of robbery.[2]

■ The standard for instructing on lesser included offenses is well settled in

---

**1.** SDCL 22–30–1 provides:

Robbery defined. Robbery is the intentional taking of personal property, regardless of value, in the possession of another from his person or immediate presence, and against his will, accomplished by means of force or fear, unless the property is taken pursuant to process or otherwise pursuant to law.
SDCL 22–30–6 provides:

Degrees of robbery. Robbery when accomplished by the use of force or by putting the person robbed in fear of some immediate injury to his person is robbery in the first

degree. When accomplished in any other manner, it is robbery in the second degree.

**2.** This is pursuant to SDCL 22–30A–1 and 22–30A–17(3), which provide in pertinent part:

SDCL 22–30A–1. "Any person who takes, or exercises control over, property of another with intent to deprive him of it, is guilty of theft."
SDCL 22–30A–17. Theft is grand theft if:

    .    .    .    .    .

(3) Property of any value is taken from the person of another[.]

this jurisdiction. We employ a legal test and a factual test to determine whether an offense is necessarily included within a greater offense and whether the requested instruction on the lesser offense must be given. *See State v. Groves*, 473 N.W.2d 456 (S.D.1991); *State v. Tapio*, 459 N.W.2d 406 (S.D.1990); *State v. Gillespie*, 445 N.W.2d 661 (S.D.1989); *State v. Scholten*, 445 N.W.2d 30 (S.D.1989); *State v. Bonrud*, 393 N.W.2d 785 (S.D.1986).

■ Holloway *never requested* an instruction on grand theft at the time of trial, and there is no record of any objection to the robbery instruction; therefore, Holloway failed to preserve any error for appeal on this issue. We have previously held when no objections were made by the defendant to any instructions of the court, and the defendant proposed no instructions, there is no question concerning the instructions before this court on appeal. *Carlson v. First Nat. Bank*, 429 N.W.2d 463, 465 (S.D.1988); *State v. White Mountain*, 332 N.W.2d 726 (S.D.1983); *State v. Halverson*, 87 S.D. 110, 203 N.W.2d 421 (1973).

Holloway concedes that he did not request a grand theft instruction, but he urges this court to apply the plain error rule to this issue as an alternative. We have previously stated that "the plain error rule applies only in exceptional cases, and then it must be applied cautiously; the rule does not encompass every error which occurs at trial, but only those errors which are both obvious and substantial." *See State v. Lewandowski*, 463 N.W.2d 341, 344 (S.D.1990); *People in Interest of R.R.*, 447 N.W.2d 922, 927 (S.D.1989); *State v. Dornbusch*, 384 N.W.2d 682, 686 (S.D. 1986). We fail to see how the trial court's alleged error in failing to instruct on grand theft could be both obvious and substantial when Holloway never objected to the robbery instruction, nor requested the grand theft instruction.

We have never specifically held that grand theft is a necessarily included offense of robbery and we decline to do so now. The trial court's duty is to instruct the jury on all matters of law which it determines are necessary for the jury to render a verdict. SDCL 23A–25–3. When jury instructions as a whole correctly state the law and inform the jury, they are deemed to be adequate. *Lewandowski, supra*. We find that the jury instructions given in this case satisfy the above statutory requirement and the failure to give an instruction on grand theft, even if appropriate, does not rise to the level of plain error in this case.

### 2) *Manslaughter Instruction*

■ Holloway asserts it was plain error for the trial court to give a manslaughter instruction. The trial court gave the instruction on manslaughter in the first degree as a lesser included offense of murder at Holloway's request. Thus, if the court erred in giving the manslaughter instruction, it was an error which was invited by Holloway. We have previously held that invited errors are not subject to appeal. *State v. Wiegers*, 373 N.W.2d 1 (S.D. 1985); *State v. Johnson*, 272 N.W.2d 304 (S.D.1978); *State v. Parker*, 263 N.W.2d 679 (S.D.1978). As with the grand theft instruction, we do not find this alleged error rises to the level of being so obvious and substantial as to constitute plain error. *Lewandowski, supra*. We accordingly hold that when counsel requests an instruction on a lesser included offense and the jury returns a verdict finding the defendant guilty of the lesser included, such trial tactics will not be a basis for a claim of plain error. If you seek and receive, you shall not claim plain error.

### 3) *Justifiable Homicide Instruction*

■ Holloway argues that the trial court erred when it refused to instruct the jury on justifiable homicide pursuant to SDCL 22–16–34 and 22–16–35.[3] State argues

---

**3.** SDCL 22–16–34 provides, in pertinent part: "Homicide is justifiable when committed by any person when resisting any attempt to

murder such person, or to commit any felony upon him[.]"
SDCL 22–16–35 provides, in pertinent part:

there is insufficient evidence in the record to show that Holloway was defending an attempt to commit a felony upon him or that he had reasonable grounds to apprehend a design to commit a felony. State further argues that the jury was instructed on self-defense and, therefore, considered and rejected Holloway's claim that he was defending himself, not robbing the victim.

In order for this court to reverse, we must find that if the requested instruction had been given, the jury "might, and probably would have" returned a different verdict. *State v. Willis*, 370 N.W.2d 193, 200 (S.D.1985); *State v. Bittner*, 359 N.W.2d 121, 125 (S.D.1984). While the justifiable homicide instructions and self-defense instructions are not identical, the giving of either one would require the jury to consider whether or not it believed Holloway was defending himself against Aune. Thus, the jury was instructed on self-defense, and still convicted Holloway of manslaughter in the first degree, apparently rejecting Holloway's claim that he was employing reasonable force to defend himself against Aune. We find ample evidence in the record to support this conviction and defeat Holloway's claim that he was defending himself. We cannot, therefore, say that with a justifiable homicide instruction the jury "might, and probably would have," returned a different verdict or that the trial court, after hearing all the testimony, abused its discretion in refusing to give the proposed justifiable homicide instruction. *Willis, supra.*

Accordingly, we hold the trial court did not err when it refused to instruct the jury on justifiable homicide.

Holloway additionally offers affidavits from several of the jurors to support his contention that the jury might have returned a different verdict had they been instructed on justifiable homicide. These affidavits do not contain any statement per-

taining to alleged extraneous prejudicial information filtering into the jury deliberations, nor improper outside influence having been brought to bear upon a juror. A statute and previous cases in South Dakota prohibit jurors from impeaching their verdict absent any alleged external information or influence, thus these affidavits are excluded from consideration in this appeal. SDCL 19–14–7. *Shamburger v. Behrens*, 418 N.W.2d 299 (S.D.1988); *State v. Luna*, 378 N.W.2d 229 (S.D.1985); *Buchholz v. State*, 366 N.W.2d 834 (S.D.1985).

### 4) Sentence

Holloway contends that the trial court abused its discretion in sentencing him to one hundred twenty-one years for first-degree manslaughter and twenty-five years for first-degree robbery, and that such sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment. He argues that the trial court, by sentencing him to 146 years, effectively sentenced him to life. In support of this argument, Holloway points us to numerous gratuitous statements made by the trial court at sentencing which indicate it thought the jury was too lenient.[4] We have previously acknowledged that " 'a criminal sentence must be proportionate to the crime for which the defendant has been convicted.' " *State v. Weiker*, 366 N.W.2d 823, 826 (S.D.1985) (quoting *Solem v. Helm*, 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637, 649 (1983)). We have also acknowledged that great deference is given to the sentencing court. *Bonrud*, 393 N.W.2d at 792; *Weiker*, 366 N.W.2d at 828.

In *Weiker*, we stated that "we will first determine whether a sentence 'shocks the conscience;' [citations omitted] or is so disproportionate to the crime so as to activate the Eighth Amendment[.]" 366 N.W.2d at 827. We also stated that we would only engage in an extensive review of the sen-

---

"Homicide is justifiable when committed by any person in the lawful defense of such person ... when there is reasonable ground to apprehend a design to commit a felony, or to do some great personal injury, and imminent danger of such design being accomplished."

4. Juries have the right to act irrationally or leniently. *State v. Gerdes*, 258 N.W.2d 839, 841 (S.D.1977).

tence if we first determined the sentence was manifestly disproportionate to the crime. *Id.*

For the manslaughter conviction, Holloway could have received life imprisonment pursuant to SDCL 22–6–1(3), and then, pursuant to SDCL 24–15–4, he would not have been eligible for parole. Therefore, his sentence to a term of years with parole eligibility is qualitatively different from an actual life sentence. In *State v. Lohnes,* 344 N.W.2d 686 (S.D.1984), we recognized that a trial judge may consider parole eligibility as a factor in sentencing. Although in *Lohnes,* we reversed a sentence which was conditioned upon a speculative parole date, we find it distinguishable from the present case.

The basis for our reversal in *Lohnes* was that the defendant had accepted a plea agreement based on his understanding that if he pleaded guilty to manslaughter, he would not receive a life sentence. The trial court accepted the agreement, then sentenced Lohnes to 347 years which we found to be an effective life sentence.

In the present case, however, Holloway did not have any understanding or expectation he would be sentenced to anything less than life imprisonment. While the trial court admittedly made the improvident remarks at sentencing, its sentence was within statutory limits, reflective of the seriousness of the crime, and accounted for the mitigating circumstances of the case. Therefore, although the sentence is strict, we conclude it is proportionate to the crime.

It is settled law in this jurisdiction that absent a sentence which is so excessive in duration that it shocks the conscience of the court, a sentence which is within statutory limits is not reviewable upon appeal. *State v. Swallow,* 405 N.W.2d 29 (S.D. 1987); *State v. Andrews,* 393 N.W.2d 76 (S.D.1986); *State v. Janssen,* 371 N.W.2d 353 (S.D.1985). We cannot say, in light of the circumstances involved in this case,

that the sentence imposed shocks our conscience, nor do we find it to be so disproportionate to the crime to cause us to engage in further review.

■ Finally, this court held in *State v. Rederth,* 376 N.W.2d 579, 581 (S.D.1985), as follows:

[I]t is vital that statistics, criteria, history of cases, studies and court records be introduced at the trial court level so this Court can make an enlightened appellate review ... as to the proportionality or disproportionality under the Eighth Amendment[.]

If no record is made at the trial level, the issue is not properly preserved for appeal. *State v. Sheridan,* 383 N.W.2d 865 (S.D. 1986); *State v. Christians,* 381 N.W.2d 214 (S.D.1986). The settled record and sentencing transcript contain no record of information or data regarding proportionality having been presented to the trial court for its consideration when imposing sentence. That being the case, this court will not accept an invitation to second guess the trial court on its sentence.

We affirm the trial court on all issues.

MILLER, C.J., WUEST and SABERS, JJ., concur.

HENDERSON, J., concurs in part and dissents in part.

HENDERSON, Justice (concurring in part; dissenting in part).

Holloway was eighteen years old and very drunk when he committed this crime. These two factors are not reasons to excuse taking the life of Aune. Aune, although a proud brawler and fighter by his own recorded diary, introduced in this case, had a right to live. With both men armed with knives and both highly intoxicated, a given conclusion under this record, a volatile situation exploded into one man dying and another man, in effect, sentenced to the State Penitentiary for life.* Holloway also smoked marijuana during the evening.

---

\* Per the state's expressions in its brief, Holloway "has a significant history of alcohol abuse dating from the time he was a child" and Aune "also had a considerable alcohol abuse history."

In Shakespeare, Othello II.iii, it is written by the Bard of Avon "O God, that men should put an enemy in their mouths to steal away their brains." Brother, brother, how many brains

I cannot disagree with the academic discussion of issues one, two, and three. And I concur therein. In the sentencing, however, I dissent. Holloway was sentenced to 146 years to the State Penitentiary: Twenty-five years on the robbery and one hundred twenty-one years on first degree manslaughter. *Each sentence was to be served consecutively.* Establishing the sentences as "consecutively" was to prevent this 18 year old's release at any future time.

Here, the sentence is such that this 18 year old man will have a release time at the age of 92. This is an age beyond the normal expectancy of a white male. It is far beyond the life expectancy of a Native American male, whom we refer to as Indians, as do their race. Holloway is a Native American male. I quote from *Closing the Gaps in Public Health, the Health Status of Racial and Ethnic Minorities,* by James O. Mason, Director, Centers for Disease Control, Vital Speeches of the Day, Delivered at the Commonwealth Club of California, San Francisco, California, June 27, 1986, page 693:

> The pattern of excess deaths among American Indians is striking and tragic. First, they die young; of all American Indians who die before age 70, 54 percent die before they reach 45. Eighty-seven percent of excess deaths in American Indians occur before age 45.
>
> Analysis of the leading causes of these excess deaths presents a powerful indictment of alcohol abuse. American Indian males are six times, and females 11 times, more likely to die of cirrhosis than their white counterparts. And unintentional injuries, a large share of them alcohol-related account for nearly half the total excess deaths.

Effectively, he received a life sentence. Is this sentence "... greatly excessive under traditional concepts of justice" or "manifestly disproportionate to the crime or criminal?" *United States v. Hollis,* 718 F.2d 277 (8th Cir.1983), *cert. denied,* 465 U.S. 1036, 104 S.Ct. 1309, 79 L.Ed.2d 707 (1984).

In my opinion, it is. At the sentencing hearing, page 11 of that transcript, the trial judge stated he was not going to impose a life sentence because of the mitigating factors. Assuming a flat time of 62 years on the manslaughter charge, the 18 year old defendant would be 80 years of age upon his release. Assuming a flat time of 74 years and 6 months on the entire sentence, Holloway will be 92 years of age upon his release date. This amounts to an entire life behind bars. What alternative does this leave for successful correction? What alternative does this leave for rehabilitation? What opportunity does this leave for reformation? The answer is: None. This young man's life will be over. Only one goal or objective will be served by his sentence: Retribution. Stripped away is our holding in *State v. Weiker,* 342 N.W.2d 7, 11–12 (S.D.1983), *cert. denied,* 465 U.S. 1069, 104 S.Ct. 1422, 79 L.Ed.2d 747 (1984): Rehabilitation is one of the chief goals of the criminal justice system. *See also, State v. Weiker,* 366 N.W.2d 823, 830 (S.D.1985) (Henderson, J., dissenting).

Mitigating reasons were cited by the trial court as to *why* it was not imposing the maximum sentence of life imprisonment. Does it not appear that there is an incongruous sentencing on the record? It certainly does to me. Simply put, the sentence does not comport with the intended declarations of the trial court. Essentially, my position is that it must. Furthermore, this trial judge knew or should have known that a 146 year sentence was tantamount to life imprisonment. A sentence must be given reasonable and practical construction. Poor *Thunder v. United States,* 810 F.2d 817 (8th Cir.1987). Let us examine the sentencing transcript further. It is enlightening as to *why* this sentencing should be reversed. In reading through the sentencing transcript, the aggravating factor addressed by the trial court was that the trial court *believed* that Holloway was guilty of felony murder. But the jury held otherwise. Holloway was found not guilty

attended the scene on the dark and lonely streets of Sioux Falls, that night, after the bars closed, as defendant wended his way homeward to an uncle's house?

of premeditated murder and felony murder on March 6, 1990.

Trial court had no right to sentence Holloway for a crime that the jury found he did not commit. Let us examine the trial court's rationale and statements during sentencing:

1. "I believe that if I had been on the jury I would have found you guilty of felony murder." (S.T., p. 10). (Author's note: Trial court's gratuitous remark reflects a wrongful role in a jury trial).

2. "My view of the evidence is that you did intend to rob Mr. Aune and that in the course of that robbery you stabbed him." (S.T., p. 10). (Author's note: Trial court chose to be, in effect, the factfinder).

3. *"And so you are guilty of felony murder in my opinion."* (S.T., p. 11). (Emphasis supplied mine). (Trial judge's role is to instruct the jury on the law applicable to the facts and the jury then determines the facts and applies the law. *United States v. White Horse,* 807 F.2d 1426 (8th Cir.1986).

4. "In my opinion the jury was lenient in that finding." (S.T., p. 11).

5. "Even though to some it may be inconsistent for them to find you guilty of robbery and not guilty of felony murder, the jury has the inherent right under our system of justice to do that type of leniency." (S.T., p. 11).

6. "Jury chose to express what I would call a type of jury nullification by finding you only guilty of first degree manslaughter ..." (S.T., p. 12).

7. "That does not mean, however, that you should not receive a substantial sentence in the penitentiary. *Because, as I indicated to you, I think you're guilty of felony murder."* (S.T., p. 12). (Trial court's role in jury trial cannot usurp a jury verdict to the contrary).

8. "The robbery case in this case, in my opinion, is a maximum robbery case." (S.T., p. 12).

As the trial court invaded the province of the jury, this sentence should be reversed and remanded so that the trial court would impose a sentence for the crime committed, rather than for a crime upon which the jury did not find him guilty. In my opinion, the sentence imposed herein is an illegal sentence. It simply does not comport with the verdict of the jury. Under SDCL 23A–31–1 there may be a correction or reduction of the sentence. It expresses: "A court may correct an *illegal sentence at any time* and may correct a sentence imposed in an *illegal manner within the time provided in this sentence for the reduction* of sentence." It goes on to state: "(1) Within one year after the sentence is imposed; (2) Within one hundred twenty days after receipt by the court of a remittitur issues upon affirmance of the judgment or dismissal of the appeal; or (3) Within one hundred twenty days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction; whichever is later." The sentence herein will haunt this Court; it should not be upheld. If it is upheld, the Circuit Court Judge should examine his words and his intentions and correct this sentence. If this Court affirms this sentence, the Circuit Court Judge has the power to reduce this sentence. This Indian lad has only one felony upon his record. And he has only one life to live. Effectively, his life is taken from him, as the sentence is now constituted. This Justice wrote, on behalf of this Court, *State v. Tibbetts,* 333 N.W.2d 440 (S.D.1983); it is respectfully suggested that the judiciary, in reviewing this case, consider that case. Therein, the above statute is explained and honored. It should be honored again. Holloway made a Motion to Reconsider, which the trial court denied. His court appointed lawyer asserted that the trial court reconsider its sentencing for the reasons and on the grounds that the Judge's stated reasons during sentencing about the jury's conclusions in this case were erroneous. It confounds the mind as to why the trial court decided to impose its own gradations of iniquity.

Michael Holloway is entitled to rehabilitate himself, even though he is in prison. Why do we have a state prison? Our state law provides:

SDCL 24–1–1. Penitentiary as general state prison.

The state penitentiary shall be the general prison of this state for the punishment *and reformation* of offenders wherein such offenders as may be committed thereto, according to law, by any court of this state, shall be confined, employed, and governed in the manner hereinafter provided.

(emphasis supplied mine).

Michael Holloway is a child of God. His body is the temple of his soul; it should not be encased for an entire lifetime because of a drunken act at the age of 18. Surely, he has some goodness in him (openly, he expressed his remorse and regret over the death of Aune); surely, as the years wear on in the State Penitentiary, *he has a right to improve himself* (reformation is a statutory right!); surely, he must have something to look forward to—hope. Hope that one day he shall see the sun rise again as a free man, justified by his penance, and the compassion of state officials. Our criminal justice system cannot survive on retribution alone. Notice the word "penitentiary." Where do you suppose that noun has its origin? Obviously, it comes from the word "penitent." To be "penitent" is "feeling or expressing pain or sorrow for sins or offenses: sincerely affected by a sense of guilt and resolved on amendment of life." Webster's Third New International Dictionary 1670 (1976).

The presentence investigation and record reflects Holloway's deep dependence on the use of alcohol. At the age of 11, Holloway was consuming alcohol regularly. He began consuming alcohol at the age of 4. His immediate family had a history of alcoholism, dating back to his grandparents. There is a suggestion, in this record, that Holloway has a *genetic* alcoholism syndrome. Holloway's biological father died when Holloway was too young to know him. He never had, in effect, a Dad to guide him in life's journey. His stepfather committed suicide, by hanging himself, after testifying in front of the grand jury on September 7, 1989. Shortly after he testified, the stepfather declared he would never testify again. Holloway takes the position that it was because of his actions that his stepfather committed suicide. Holloway declared, post trial, that his stepfather's suicide almost destroyed him. It should also be mentioned that Holloway began using marijuana at the age of 8 and used it almost on a daily basis. At one time he used cocaine. He became a regular smoker while in the third grade and smoked a pack and one-half a day. The family, such as it was, was poverty stricken. His mother was unemployed. According to the Michigan Alcohol Screening Test, Holloway was an absolute alcoholic. *See,* SDCL 34–20A–2 through 34–20A–96, concerning South Dakota's policies on the treatment and prevention of alcohol and drug abuse. Alcoholics, under our state law, must be treated. Our State Legislature, each year, appropriates hundreds of thousands of dollars (some of which filters to the State Penitentiary) to rehabilitate alcoholics. State counselors attempt to reform these alcoholics.

The sentencing hearing, Appeal Transcript (the trial court's court reporter denominates it such) reveals the following colloquy:

MR. NELSON: We brought this prosecution, Your Honor, and we handled this prosecution in the belief that this is a life case, a life penitentiary case. We urge you to impose that sentence in this case. After everything is said and done this is the ultimate offense. And the taking of a human life by another, in the State's view, under these facts and circumstances, we believe that our community is entitled to a life sentence in this case. And that is what we urge you to impose.

THE COURT: Mr. Schroeder?

MR. SCHROEDER: Thank you, Your Honor. Your Honor, I urge the Court not to give the maximum sentence in this case. I don't think it's a life case. In this case, the jury did consider the two—what I would consider the ultimate charges of murder and found him not

guilty. I am going to ask the Court to give a term of years in the penitentiary, giving Mike the chance to get out. I think it's obvious from the PSI and from the comments of the people that knew him and know him that he needs time to mature. He needs time to formulate a plan for his future, to make some decisions about what he wants to do. Hopefully his time in custody will give him the opportunity to do that as well as to better himself. On behalf of Mike I would like to thank the Aunes for their understanding and their compassion and their feeling. I guess that Mike needs to work out the problems that he's got, especially the alcohol problems. But I don't really feel that he needs to be given the maximum sentence in this case. You were made aware through the PSI and through testimony what Mike's formative years were like. He really had no role models to follow. And alcohol was an everyday thing with his family, beginning at a very early age for him. Obviously, what happened to him as a child is no defense to what he was found guilty of. And it's no excuse. But I think it certainly sheds some light on how Mike got here and what he needs to work on to improve himself and to handle some of the problems that he's got. I do believe that he has started to mature some during the pendence of this case and through the course of his trial. As you have been made aware of in the PSI and through the stipulation at trial he suffered the loss of the person that he considered to be his father, although not by law. He had to deal with the feeling that he was partially responsible because of the situation that he put him in and brought Mike before the Court. And as a result I think that has started his maturing process. I think you were able to see Mike during the course of the trial. I think that he showed true remorse for what had happened and that it had a great effect on him. It is true that Mike initially, even by his own admission, said that he thought about just riding it out and see what happened and wait and not worry about it. He did listen to his

stepfather and he came forward, not only with himself, but also with the evidence that was used at trial. The prosecution talks about the selective memory and the story and the tesitmony [sic] that he gave. I guess what I would point out to the Court, also, is that there were several days after this happened that if he really wanted to he could have done a lot of different things. Destroying all of that evidence, hiding it, burying it, leaving town. He didn't do any of that. And he ultimately indicated—listened to his stepfather's advice and came forward. I think that that shows that Mike does have a conscience. And I think that people that have that kind of a conscience can change in time. Based on all that we'd ask that you do give Mike a term of years in the penitentiary to allow him a chance to get back into society while he is still a relatively young man. The other thing that we would ask, Your Honor, is that whatever sentence you give, if it's appropriate, that you would deem it to have started on the date that he came forward and was arrested. Thank you.

THE COURT: Mr. Holloway, this is the opportunity that you have to make any statement you'd like to make to the Court.

DEFENDANT HOLLOWAY: Thanks, Your Honor. I'd like to say sorry to the Aune family. I know I put them through a lot of hell. Put my own family through a lot of hell. I don't think I deserve a life sentence in the penitentiary. Making best use of what I can when I do get up there. They have programs up there for alcohol and drugs. I'm going to try and get a trade. Finish my high school. Try to make it out again and go straight and become a productive person in society. With the State's help I think I can do that. That's all I got.

THE COURT: Well, this case is a little bit unusual in one respect. Seldom have I found a family of a victim to be as compassionate as the family of Mr. Aune's has been. The evidence indicated that Mr. Aune was an outgoing, compassionate, forgiving person. Apparently he got that from his parents because they

don't believe that you should receive life imprisonment. And that is unusual. In this case I believe that if I had been on the jury I would have found you guilty of felony murder, which carries a life sentence, mandatory life sentence of life imprisonment. My view of the evidence is that you did intend to rob Mr. Aune and that in the course of that robbery you stabbed him. And those stabs resulted in wounds that resulted in his death. And so you are guilty of felony murder in my opinion. And that crime carries a mandatory sentence of life.

In reviewing this transcript, it is noted that the decedent's parents did not believe that Holloway should be sentenced to life in prison. Why? The sentencing judge mentioned this as a mitigating factor. However, he paid no heed to this lay supplication. The only aggravating factor I can perceive at the sentencing hearing, was the trial judge's personal belief that Holloway was guilty of felony murder.

In further reviewing the proceedings below, I was astounded to learn that the jury rendered *oral* verdicts, not written verdicts. In my opinion, the jury should have been submitted written verdict forms, which should have been signed by the foreperson of the jury, and same should have been recorded and filed. Under this state's Conduct of Jury Trials, under SDCL 15–14–25, "The verdict must be in writing, signed by the foreman, and must be read by the clerk of the jury, and the inquiry made whether it is their verdict." Further, SDCL 23A–26–11 pertaining to recording of the verdict ("... the clerk ... must read it to the jurors and inquire of them whether it is their verdict"), combined with SDCL 15–14–26 which concerns itself with polling the jury, by fair implication, suggests that we, in South Dakota, do not have oral verdicts. Certainly, a clerk or a judge cannot read an oral verdict. It is oxymoronic. If the people of this state desire oral verdicts, they may express their point of view to the State Legislature to pass a law to that effect. *See*, 89 C.J.S. § 493 concerning the general subject of the necessity of reducing a verdict to writing. There, it is expressed: "Whether or not a verdict must be reduced to writing depends on the statutes and practice of the particular jurisdiction." To repeat: South Dakota law does not provide for oral verdicts. Was the sentence stemming therefrom "illegal" under SDCL 23A–31–1 and *Tibbetts, supra?* And if not, was the sentencing imposed in an "illegal manner." In my opinion, the sentence was "greatly excessive under traditional concepts." And it was "manifestly disproportionate *to the criminal.*" It was illegally imposed and also imposed in an illegal manner. Holloway was sentenced based upon a personal conviction of the trial judge.

Under SDCL 19–8–1; SDCL 19–10–2; *Nase v. Christensen*, 409 N.W.2d 131, 132 (S.D.1987); and *Gravning v. Zellmer*, 291 N.W.2d 751 (S.D.1980), this writer takes judicial notice of the following data pertaining to the possible maximum sentence for the offense of first degree manslaughter in each of the following states:

| STATES | DEFINITION STATUTE | SENTENCING STATUTE | MAXIMUM SENTENCE ALLOWED |
|---|---|---|---|
| Alabama | § 13A–6–3 | § 13A–5–8 | 1 yr, 1 day, 10 years |
| Alaska | § 11.41.120 | § 12.55.125 | 20 years |
| Arkansas | § 5–10–104 | § 5–4–401 | 3–10 years |
| Arizona | § 13–1103 | § 13–701 | 5 years |
| California | § 192 | § 193 | 3, 6 or 11 years |
| Colorado | § 18–3–104 | § 18–1–105 | 2–8 years |
| Connecticut | § 53a–55 | § 53a–35a | 1–20 years |
| Delaware | § 632 | § 4205 | 3–30 years |
| Florida | § 782–07 | § 775.082 | 15 years |
| Georgia | § 26–1102 | § 26–1102 | 1–20 years |
| Hawaii | § 707–702 | § 706–661 | 20 years |
| Idaho | § 18–4006 | § 18–4007 | 15 years |

| STATES | DEFINITION STATUTE | SENTENCING STATUTE | MAXIMUM SENTENCE ALLOWED |
|---|---|---|---|
| Illinois | § 38–9–2 | § 1005–8–2 | 15–30 years |
| Indiana | § 35–42–1.3 | § 35–50–2.5 | 10 years |
| Iowa | § 707.4 | § 902.9 | 10 years |
| Kansas | § 21–3403 | § 21–4501 | 1–20 years |
| Kentucky | § 507.030 | § 532.060 | 10–20 years |
| Louisiana | § 31 | § 31 | 21 years |
| Maryland | § 203 | § 1252 | 20 years |
| Massachusetts | § 265–13 | § 265–13 | 20 years |
| Michigan | § 28.553 | § 28.553 | 15 years |
| Minnesota | § 609.20 | § 609.20 | 15 years |
| Mississippi | | § 97–3–25 | 2–20 years |
| Missouri | § 565.005 | § 565.031 | 2–10 years |
| Montana | § 45–5–103 | § 45–5–103 | 2–40 years |
| Nebraska | § 28–305 | Appendix | 1–25 years |
| Nevada | § 200–070 | § 200.090 | 1–6 years |
| New Hampshire | § 630.2 | § 630.2 | 30 years |
| New Jersey | § 2C:11–4 | § 2C:43–6 | 10–20 years |
| New Mexico | Unavailable | | |
| New York | § 125.20 | § 70.00 | 25 years |
| North Carolina | § 14–18 | § 14–18/14–1.1 | 20 years |
| North Dakota | § 12.1–16–02 | § 12.1–32–01 | 10 years |
| Ohio | § 2903.03 | § 2929.11 | 5–25 years |
| Oklahoma | § 711 | § 715 | Not less than 4 years |
| Oregon | § 163.118 | § 161.605 | 20 years |
| Pennsylvania | § 2503 | § 1103 | 10 years |
| Rhode Island | § 11–23–3 | § 11–23–3 | 30 years |
| South Carolina | § 16–3–50 | § 16–3–50 | 2–30 years |
| Tennessee | § 39–13–211 | § 40–35–111 | 3–15 years |
| Texas | § 19.04 | § 12–33 | 2–20 years |
| Utah | § 76–5–205 | § 76–5–203 | 1–15 years |
| Vermont | § 2304 | § 2304 | 1–15 years |
| Virginia | § 18.2–35 | § 18.2–10 | 1–10 years |
| Washington | § 9A.32.060 | § 9A.20.021 | 10 years |
| West Virginia | § 61–2–4 | § 61–2–4 | 1–5 years |
| Wisconsin | § 940.05 | § 939.50 | 10 years |
| Wyoming | § 6–2–105 | § 6–2–105 | 20 years |

Records in a criminal case are as fully before the Court through judicial notice as they would be if introduced in evidence. *Alexander v. Solem*, 383 N.W.2d 486, 489 (S.D.1986); *Gregory v. State*, 325 N.W.2d 297, 299 (S.D.1982). SDCL 19–8–1 provides: "Every court of this state shall take judicial notice of the common law and statutes of every state, territory, and other jurisdictions of the United States." Heretofore, I have set forth facts appearing in the Presentence Investigation. These facts were not admitted in evidence. And said report was not forwarded to this Court on appeal. Only after contacting this Court's clerk, who contacted the Minnehaha County clerk, was the investigation found. It was in the Court Services office (not in the official file), whereupon the two aforesaid clerks had it filed in the appeal file. I now take judicial notice of those facts to further the best interests of justice. As it is important to one of my positions heretofore expressed, the following are what I consider to be the relevant statutes regarding presentence reports. It is not an exhaustive listing of statutes and rules. Important passages exist, relating to "a rehabilitative program" and "correctional treatment" for "the defendant." This would include Mi-

chael Holloway. God doesn't make junk; men make other men into junk. If man has done this, man should rectify his misdeeds. The statutes and rules:

23A–27–10. (Rule 32(c)(3)(D)) Return of presentence report to court services officer—Filing with board of pardons and paroles and penitentiary—Use of information upon written order of judge. Any presentence investigation report made available to a defendant or his counsel and the prosecuting attorney shall be returned to the court services officer immediately following the imposition of sentence or the granting of probation. When a person is sentenced to the penitentiary, a copy of his presentence report shall be filed with the board of pardons and paroles and the penitentiary. Penitentiary officials and the board of pardons and paroles may utilize information contained in the report, including any pre-plea report being used as the presentence investigation report, *for the development of a rehabilitation program for the individual.* However, the contents of the reports may not be disclosed to the individual without a written order from the sentencing judge or his successor. (emphasis supplied mine).

23A–27–5. (Rule 32(c)(1)) Pre-sentence investigation and report—Contents not disclosed unless defendant convicted. A presentence investigation may be ordered in the discretion of a court. The court service officer of a court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless, with the permission of the court, the defendant waives a presentence investigation and report, or the court finds there is in the record information sufficient to enable the meaningful exercise of sentencing discretion, and the court explains this finding on the record.

The report shall not be submitted to a court or its contents disclosed to anyone unless the defendant has pleaded guilty or nolo contendere or has been found guilty, except that a judge may, with the written consent of the defendant, inspect a presentence report at any time.

23A–27–6. (Rule 32(c)(2)) Contents of report of presentence investigation. The report of a presentence investigation shall contain any prior criminal record of the defendant and such information about his characteristics, his financial condition and the circumstances affecting his behavior as may be helpful in imposing sentence or in granting probation *or in the correctional treatment of the defendant,* and such other information as may be required by the court. (emphasis supplied mine).

23A–27–8. (Rule 32(c)(3)(B)) Summary given to defendant in lieu of presentence report—Comments received. If a court is of the view that there is information in a presentence report which should not be disclosed under § 23A–27–7, the court in lieu of making the report or part thereof available shall state orally or in writing a summary of the factual information contained therein to be relied on in determining sentence, and shall give the defendant, his counsel, or the prosecuting attorney an opportunity to comment thereon. The statement may be made to the parties in chambers.

The trial judge did not refer to the presentence report, when sentencing Holloway, except at the beginning when he expressed that "a pre-sentence investigation was ordered by the Court and that pre-sentence investigation has been completed." One key comment, at sentencing, he did make: "While you did not immediately come forward, your coming forward with a sack full of evidence *is evidence that there is hope for you.*" (Sentencing Transcript at 11) (emphasis supplied mine).

It is obvious the maximum possible sentence in each of the other states is below the penalty assessed against Holloway. In fact, the state with the highest maximum other than South Dakota is Montana with a maximum of 40 years. The Montana maximum is 81 years *less* than the sentence the Defendant received. Therefore, the sentence "shocks the conscience," and is totally disproportionate based upon the gravity of the offense, and importantly, the sentences imposed upon other criminals or the

maximum allowed for the same offense in other jurisdictions.

This Court must not eschew the goals of rehabilitation. *State v. Weiker*, 342 N.W.2d at 11. But that is exactly what it accomplishes by affirming this sentence. One of the criteria to use in determining proportionality is the "... sentences imposed for the commission of the same offense in other jurisdictions." *State v. Weiker*, 366 N.W.2d at 825. Therefore, it would appear that the trial court must consider the possible maximum of other jurisdictions in first making its threshold determination.

In *State v. Bad Heart Bull*, 257 N.W.2d 715 (S.D.1977), we expressed:

> Generally, the state and federal constitutional provisions barring cruel and unusual punishments refer to the character, such as barbaric penalties involving physical torture, rather than the duration of punishment. See 21 Am.Jur.2d, Criminal Law, Section 612. Although punishment by imprisonment is not per se cruel and unusual it may be constitutionally offensive when the duration of the sentence prescribed is so excessive or disproportionate to the crime committed as to shock "the conscience and reason of men generally." *State v. Becker* (1892) 3 S.D. 29, 40, 51 N.W. 1018, 1022.

*Id.* at 720.

This entire scenario, comprised of drunkenness by both participants in a fight in an alley in Sioux Falls (both with knives), the background of this young Indian male, the remorse of this appellant, the production of the evidence against himself, the length of the sentence, the victim's parents expressing that they did not want Holloway put away for life, sentencing Holloway on the personal belief that Holloway was guilty of felony murder rather than first degree manslaughter, the victim's diary reflecting his past physical encounters reflect a constitutionally offensive sentence. It shocks "the conscience and reason of men generally."

In *Solem v. Helm*, 103 S.Ct. at 3009 n. 16, the United States Supreme Court expressed, inter alia, "rather, in applying the Eighth Amendment the appellate court decides only whether the sentence under review is within constitutional limits." Therefore, the statutory limits, in isolation, is not the determining factor. In 1215, three chapters of the Magna Carta were devoted to the rule that "amercements" could not be excessive. Whereof, did our forefathers demand that punishment not be unjust or cruel. The Eighth Amendment to the United States Constitution inherits this belief for all Americans.

In *State v. Antelope*, 304 N.W.2d 115, 117 (S.D.1981), we reannounced that which I have depicted above. But added a little wrinkle which needs mentioning. We expressed, inter alia, "Upon review of the facts of this case, we hold that appellant's sentence, while severe, is not so cruel and unusual as shock the conscience *of the Court."* (emphasis supplied mine). Under either theory, be it of men generally, or this Court, we should be shocked at the procedures below, the sentence imposed upon "this criminal," and reverse for a resentencing and in so doing, vacate the entire sentence below.

Counsel below, in a Motion to Reconsider, expressed to the Court that his decision on sentencing was "erroneous." In my opinion, under the authorities above, counsel has protected the record. Assuming arguendo, that such is not the case, this writer relies upon the plain error rule under *State v. Brammer*, 304 N.W.2d 111 (S.D.1981) as this is an exceptional circumstance where a litigant's rights are substantially affected. *See also*, SDCL 23A–44–15; SDCL 19-9-6.

Long after my service on this Court, long after the race is run by this Justice, Holloway, under the trial court's and appellate court's decisions, shall be in South Dakota's penal system. Wouldst, I pray, that some Board, Court, or Governor heed some of the authorities, words, and spirit encompassed herein, like, hopefully, "apples of gold in settings of silver." Proverbs 25:11. Then, perhaps, with penance and rehabilitation, this Indian lad, as an Indian man,

shall breathe the air of freedom. And a life shall not be wasted.