STATE of South Dakota, Plaintiff
and Appellee,

v.

Kenneth R. WEIKER, Defendant
and Appellant.

No. 13821.

Supreme Court of South Dakota.

Argued Feb. 17, 1983.

Decided Nov. 23, 1983.

Rehearing Denied Dec. 27, 1983.

Certiorari Denied Feb. 27, 1984.
See 104 S.Ct. 1422.

8

Richard H. Wendt, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

James D. Leach, Rapid City, for defendant and appellant.

MORGAN, Justice.

This appeal arises from Kenneth Weiker's (Weiker), appellant, conviction on three counts of distribution of a controlled substance. Subsequently, Weiker was convicted of being a habitual offender and was sentenced to life imprisonment on each offense. Weiker appeals from these convictions. We affirm the convictions, strike the life sentences and remand for re-sentencing.

Robert Wooley (Wooley), who was working for the police department in Rapid City, South Dakota, bought controlled drugs on three occasions from Weiker. These purchases were on January 18, 1982 (cocaine), January 23, 1982 (cocaine), and February 1, 1982 (hashish). Following affidavits filed by Wooley and a deputy sheriff, a search warrant was issued on February 27, 1982, and Weiker's residence was searched the same day. Only one item seized in the search was admitted at trial. That item was a recipe box containing index cards showing accounts receivable. State main-

tained these accounts receivable were the amounts owed to Weiker by purchasers of drugs. On April 21–22, 1982, Weiker was tried before a jury and was convicted of three counts of distribution. Thereafter the court found Weiker guilty on the habitual offender count and sentenced him to life imprisonment on all three counts, the sentences to run concurrently.

On appeal, Weiker raises three issues. First, Weiker contends that the trial court should have suppressed the evidence seized in the search. Next, Weiker contends that the sentences he received are cruel and unusual punishment. Finally, Weiker argues that one of his previous felony convictions was unconstitutional and therefore the habitual offender conviction fails.

Initially, Weiker alleges that the recipe box and cards admitted as Exhibit 4 should have been suppressed because the search was a general search in violation of U.S. Const. amend. IV and S.D. Const. art. VI, § 11,[1] and because the evidence used to include the recipe box in the search warrant was stale.

▬ These constitutional provisions require that search warrants be particular, not general. In *State v. Clark*, 281 N.W.2d 412 (S.D.1979), this court in discussing general searches stated that "[a] suggested test of the existence of the requisite particularity is whether the warrant places a meaningful restriction on the objects to be seized." *Id.* at 416. *See People v. McEwen*, 244 Cal.App.2d 534, 53 Cal. Rptr. 362 (1966). Such particularity requires that an officer does not have any discretion with regard to what is to be seized. *Clark, supra; Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). Where, however, the search involves contraband or inherently illicit property, a lesser standard of particu-

larity of description is required on the search warrant. *Clark, supra. See United ed States v. DePugh*, 452 F.2d 915 (10th Cir.1971).

The search warrant authorized a search for the following items:

[T]wo silver bars with the notation "Homestake 1980"; one double tiger eye ring, solid gold setting, one diamond ring with a diamond in the center of the ring and three smaller diamonds on the side, a solid gold setting; one small suitcase, red in color; *one recipe box, beige in color with numerous cards inside;* one black book approximately two inches by three inches in diameter; one stereo; one 30–30 rifle; tires, rims, and mag wheels.

(Emphasis added.) The search lasted approximately three and one-half hours during which time a recipe box, pieces of jewelry, stereo equipment, rifles, and a bag of "green leafy substance" were taken into custody.[2] The officers were also told to watch for narcotics and drugs. State contends this is in keeping with the duty of officers to be alert for contraband when it is encountered.

▬ Considering the lesser standard of particularity required for contraband or inherently illicit property, *Clark, supra,* the search here was reasonable in looking for the stolen property and drugs. Although numerous items were confiscated during the search and were the basis for charges later dismissed, only the recipe box containing accounts receivable was admitted at trial. This box is described in sufficient detail in the search warrant to meet any test of particularity.

▬ Weiker also contends that the inclusion of the recipe box in the search warrant was based on stale information. He claims the probable cause on which a search war-

---

1. The Fourth Amendment of the United States Constitution requires that a search warrant must "particularly describ[e] the place to be searched, and the persons or things to be seized." Art. VI, § 11 of the South Dakota Constitution requires that a search warrant must "particularly describ[e] the place to be searched and the person or thing to be seized."

2. Weiker was also charged in the information with receiving stolen property. Further, according to State's brief, Weiker could have also been charged with possession of a firearm by a felon. State dismissed these two counts and the habitual offenses related to them in exchange for Weiker admitting the three prior felony convictions.

rant is based must exist at the time the warrant is issued, not at an earlier time. *See United States v. Steeves*, 525 F.2d 33 (8th Cir.1975) cited with approval in *State v. Roth*, 269 N.W.2d 808 (S.D.1978). The test for staleness of information "is whether from the facts presented it is reasonably probable that the items to be seized are still on the premises." *State v. Weiker*, 279 N.W.2d 683, 685 (S.D.1979). *See State v. Roth, supra.*

In *Roth, supra,* this court stated: "The likelihood that criminal activity is of a continuing nature rather than singular in occurrence depends upon the facts and circumstances of each case." 269 N.W.2d at 812. There, this court held the affidavits reflected that the defendants were involved in a series of drug transactions and thus the search warrants were properly executed. *See also State v. Wielgus*, 278 N.W.2d 805 (S.D.1979).

Here, in the affidavit attached to the search warrant, Wooley states that during the previous two months he had been in Weiker's home about ten times and nearly every time he saw the recipe box, which was used for drug transactions. Wooley further states in the affidavit that "[i]n the past two months I have made numerous purchases of drugs from Kenny Weiker."

Considering "the general rule that every reasonable inference possible should be drawn to support the determination of probable cause made by the magistrate," *Wielgus*, 278 N.W.2d at 806, we conclude the magistrate below properly inferred from the affidavits that the criminal activity, i.e., drug transactions, was of a continuing nature and thus the magistrate had probable cause to issue the search warrant of Weiker's premises.

We next turn to Weiker's contention that the sentences imposed upon his convictions constitute cruel and unusual punishment in violation of the federal and state constitutions.[3]

SDCL 22–7–8 states: "When a defendant has been convicted of at least three prior convictions in addition to the principal felony, the sentence for the principal felony shall be enhanced to the sentence for a Class 1 felony." The punishment for a Class 1 felony is life imprisonment. In addition, a fine of $25,000 may be imposed. SDCL 22–6–1. Weiker admitted three prior felony convictions, all for third-degree burglary in South Dakota. These convictions occurred in 1970, 1974, and 1978. In the present action, the jury found Weiker guilty of three felony counts of distribution of a controlled substance. Then, according to SDCL 22–7–8, the trial court sentenced Weiker to life imprisonment on all three distribution counts with the sentences running concurrently. Accordingly, Weiker is not eligible for parole, SDCL 24–15–4, unless these life sentences are first commuted by the governor.

The constitutionality of SDCL 22–7–8, the habitual offender statute, was upheld in *State v. O'Connor*, 265 N.W.2d 709 (S.D.1978). Although a sentence within the statutory limits is not generally reviewable on appeal, *State v. Helm*, 287 N.W.2d 497 (S.D.1980); *State v. Williams*, 84 S.D. 547, 173 N.W.2d 889 (1970), a sentence may be constitutionally offensive if its length is so excessive as to "shock the conscience." *State v. Bad Heart Bull*, 257 N.W.2d 715 (S.D.1977). The United States Supreme Court in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), reviewed the standards for determining whether a punishment is "excessive." A punishment is unconstitutional if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the pointless infliction of suffering; or (2) is grossly disproportionate to the severity of the crime. *Id.*

Recently the United States Supreme Court examined life sentence without parole under our recidivist statute in the case

---

3. The United States Constitution, Eighth Amendment, provides, "[e]xcessive bail shall not be required, nor excessive fines imposed nor cruel and unusual punishments inflicted." Similarly, the South Dakota Constitution, art. VI, § 23, states, "[e]xcessive bail shall not be required, excessive fines imposed, nor cruel punishments inflicted."

of *Solem v. Helm*, —— U.S. ——, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). This decision is particularly pertinent to the case before us.

The commonly accepted goals of punishment referred to in *Gregg v. Georgia, supra*, are denominated as (1) retribution, (2) deterrence, both individual and general, and (3) rehabilitation. A life sentence without parole certainly exacts retribution. It also deters the convict from committing further crime, and removes him from the street. Furthermore, it puts other would-be felons on notice that recidivism carries a high penalty. But it completely eschews the goal of rehabilitation.

 As we stated, SDCL 22–7–8 mandates enhancement of a penalty to a sentence for a Class 1 felony and SDCL 22–6–1(2) fixes the maximum penalty for a Class 1 felony at life imprisonment with provision for an additional $25,000 fine. We point out, however, that such penalty is a maximum, it is not a mandatory penalty as was the case of *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). The recidivist statute is purely a mathematical exercise; one plus one plus one plus one equals the sentence for Class 1 felony. The sentence itself, however, is another matter for the *Helm* decision instructs us that the sentence must be proportional.[4] That analysis is guided by objective criteria: (1) the gravity of the offense and the harshness of the penalty; (2) sentence imposed on other criminals in the same jurisdiction; and (3) sentences imposed for the same crime in other jurisdictions. —— U.S. at ——, 103 S.Ct. at 3011, 77 L.Ed.2d at 650.

 Weiker was originally convicted of three counts of distribution of controlled substance in violation of SDCL 22–42–2, which offenses constituted Class 4 felonies for which a maximum of ten years' imprisonment and a $10,000 fine may also be imposed, as provided by the legislature.[5] SDCL 22–6–1. On examining whether the life sentence constitutes cruel and unusual punishment, the focus is on the principal felony which triggers the life sentence, recognizing that the prior convictions are relevant to the sentencing decision. —— U.S. at —— fn. 21, 103 S.Ct. at 3013 fn. 21.

Certainly, Weiker's drug-dealing charges are, on their face, more serious than Helm's no-account check charge although the latter is a Class 5 felony with a maximum of five years' imprisonment and a possible $5,000 fine, SDCL 22–6–1, only one step removed from Weiker's Class 4 felonies. The three previous convictions were all third-degree burglaries committed over a period of approximately ten years.

Defense counsel suggests that Weiker's offenses were absolutely victimless because in each instance he distributed the drugs to a police operative who immediately transferred them to the police. This argument is so patently inane that it deserves mention for that reason alone. Weiker was a drug distributor who fed the vicious habits of numerous victims. One does not have to engage in conjecture to assume that for each of the sales made to the police informant there were many other sales made. The recipe box, previously mentioned, which Weiker attempted to suppress, was his book of accounts and evidenced numerous such transactions. Were his previous convictions for the same offense it would be relatively easy to write him off as incorrigible, beyond rehabilitation, and a worthy candidate for a life sentence without parole. But that is not the case. His prior offenses were in the

---

4. Dunn, J., the author of the majority opinion in *State v. Helm*, 287 N.W.2d 497 (S.D.1980), should know that the suggestion in his dissent that proportionality of sentence is a legislative act, flies in the face of reason as well as in the face of *Solem v. Helm, supra*. Determining proportionality is a judicial decision.

5. According to the record, Weiker was originally charged with three counts of distribution of a controlled substance and one count of receiving stolen property. According to the State's brief, the receiving of stolen property count, a possession of firearms by a convicted felon charge, and the related habitual offender charge were dropped in exchange for Weiker admitting to three prior felonies.

nature of offenses against property rights. In light of these past offenses, it appears contrary to one of the goals of our criminal justice system to deny any effort at rehabilitation.

That is exactly what the trial court would do. There are cases where the imposition of a life sentence without parole upon a recidivist is meritorious, but they are rare and should involve a history of much more serious offenses that by reason of their brutality or calculated destructiveness render irrelevant the goal of rehabilitation and require in vindication of public safety and the moral underpinnings of the criminal law that the offender forfeit his right to ever again be set free.[6]

A life sentence without parole is the penultimate sentence, exceeded in severity only by capital punishment. Indeed, until the 1979 Legislature enacted the capital punishment statutes, a life sentence without parole was the ultimate punishment in this state. While the *Helm* court declined comment on the general validity of sentence without possibility of parole, the decision dealt at great length on that subject. It pointed out the distinction between our statute and the Texas statute considered in *Rummel v. Estelle, supra;* the distinction being in the concept of parole and commutation. The law generally specifies when a prisoner is eligible for parole. Parole is a regular part of a rehabilitation process and assuming good behavior, it is the normal expectation in the vast majority of cases. On the other hand, commutation is an act of executive clemency extended on an ad hoc basis without any standards.

In light of the *Helm* decision, we would suggest to the legislature that, in its capacity of setting the terms of sentences, an examination of the Texas system might prove fruitful in the event the United States Supreme Court ever does have occasion to examine the validity of sentences

without parole. But even more strongly, we recommend to the trial court that the maximum of life sentence be imposed only in such cases where it can determine from the facts of the principal offense and the previous convictions that rehabilitation is so unlikely as to be removed from consideration in sentencing; that the interests of society demand that the convict be kept off the streets for the rest of his life; and that society, speaking through the legislature, has clearly mandated that the offense or offenses involved are so malignant that a lifetime of incarceration is the only adequate retribution.

In our opinion, Weiker's sentence is not proportional. It fails on the first criterion. It is too harsh for the gravity of the offenses involved. In view of this, we need not discuss the remaining two criteria.

■ Finally, we turn to Weiker's contention that he received ineffective assistance of counsel on a prior felony, and thus that felony is void and the habitual offender conviction here fails. Weiker, however, neither appealed that prior conviction nor did he raise this contention at a post-conviction proceeding which was the proper procedure to address ineffective assistance of counsel.[7] *See State v. McBride*, 296 N.W.2d 551 (S.D.1980). This issue is not properly before us here.

We affirm the convictions, strike the life sentences as violative of the South Dakota Constitution, art. VI, § 23, and remand for re-sentencing.

FOSHEIM, C.J., concurs.

WOLLMAN and HENDERSON, JJ., concur specially.

DUNN, J., dissents.

WOLLMAN, Justice (concurring specially).

I join in the majority opinion. I would go further, however, and hold that the sen-

---

6. The dissent emphasizes only Weiker's current offenses, ignoring the relatively minor character of the prior offenses which triggers the recidivist statute.

7. We note the 1983 South Dakota Legislature repealed SDCL ch. 23A–34 Post Conviction Proceedings effective July 1, 1983. *See* 1983 S.D. Sess.L. ch. 169 § 15. Weiker had access to this remedy since his conviction on April 22, 1982.

tences also fail when measured against the third of the criteria established by the United States Supreme Court in *Solem v. Helm,* — U.S. —, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

Weiker argues that in only one other state, Wyoming, could he have received a life sentence without possibility of parole for the crimes of which he now stands convicted. The State has not challenged this assertion, and therefore I accept it as true. Thus, although other jurisdictions may authorize a life sentence for drug violations, only Wyoming and South Dakota provide that such a sentence shall be without possibility of parole.

If Weiker's prior felonies had involved drug related violations, we would probably not long pause in affirming the sentences. *See Solem v. Helm, supra,* — U.S. at —, 103 S.Ct. at 3014, 77 L.Ed.2d at 655 n. 26. As it is, however, these are his original drug related convictions, and in only one other state could he have received as harsh a penalty as that imposed upon him in this state.

Were it not for the fact that SDCL 24–15–4 forecloses the Board of Pardons and Paroles from granting parole, I would have little hesitancy in affirming the sentences, for Weiker's criminal record and his highly structured, regularized scheme of drug distribution render him deserving of a lengthy sentence on the grounds of retribution, deterrence, and public protection. His principal felonies were part of a planned, apparently highly profitable scheme of drug dealing, in stark contrast to the hapless Helms' stuporous check writing offense.

To hold that the sentences must be set aside is not to restrict the trial court from imposing sentences that will have the practical effect of carrying out the legislative policy incorporated in SDCL 22–42–2 and 22–7–8. Even without the sentence enhancement authorized by SDCL 22–7–8, the trial court could have sentenced Weiker to three consecutive ten-year sentences. SDCL 22–6–6.1. In view of his three prior felony convictions, Weiker will not be eligible for parole until he has served at least three-fourths of any sentence of less than life imprisonment. SDCL 24–15–5(3) and 24–15–7.

HENDERSON, Justice (concurring specially).

I would affirm the convictions and remand for resentencing under the guidelines set forth in *Solem v. Helm,* — U.S. —, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), for the reason that the trial court did not have the guidelines set forth by the United States Supreme Court at hand when it sentenced Weiker.

At such resentencing, under my theory, the trial court would specifically determine a just punishment, to possibly include a life sentence or sentences, based upon the criteria set forth in *Helm.* This would entail an evidentiary hearing comparing sentences imposed on other criminals in this state and comparing sentences imposed for the same crime in other jurisdictions.

DUNN, Justice (dissenting).

The legislature has determined a proportional sentence for a habitual criminal. SDCL 22–7–7 provides that "[w]hen a defendant has been convicted of one or two prior felonies under the laws of this state or any other state or the United States, in addition to the principal felony, the sentence ... *shall* be enhanced by changing the class of the principal felony to the next class which is more severe...." (Emphasis added.) SDCL 22–7–8 provides: "When a defendant has been convicted of at least three prior convictions in addition to the principal felony, the sentence for the principal felony *shall* be enhanced to the sentence of a Class 1 felony." (Emphasis added.)

This is in accord with the Modern Rules of Sentencing which are taught at the National Judicial College and which set out the following guidelines:

1. Probation on first offense
2. A short definite sentence on second offense

3. Doubling of sentence for a third offense
4. Throw away the key on any further offenses

Rehabilitation is sought in the first three stages, and in the final stage the defendant is put away as being incapable of rehabilitation, and a menace to society.

I see no conflict in South Dakota's statutes with the criteria set down in *Gregg v. Georgia,* where the Court stated: "In assessing a punishment selected by a democratically elected legislature against the Constitutional measure, we presume its validity.... And a heavy burden rests on those who would attack the judgment of the representatives of the people." 428 U.S. 153, 175–76, 96 S.Ct. 2909, 2926, 49 L.Ed.2d 859, 876 (1976). Furthermore, specifications of punishments are "peculiarly questions of legislative policy." A defendant is given every opportunity for rehabilitation through probation on a first offense, a short prison term on second offense, and a longer sentence on third offense. When a defendant is offered all of these opportunities to rehabilitate himself, and proceeds to commit three more crimes of even a more serious nature, there is no room for him to complain of a sentence that does not provide for rehabilitation, or to make a constitutional claim of "cruel and unusual punishment." The time comes when courts must consider the victims, society in general, and put a stop order on a defendant who has spent most of his adult life in criminal activities.

I am certainly in agreement that this court must give due deference to the split decision of the United States Supreme Court which examined the life sentence without parole under our recidivist statute. *Solem v. Helm, supra.* In a five to four decision, the court struck down South Dakota's statute as it applied to an alcoholic whose principal felony was the writing of a $100 bad check. However, we *must not overreact* to this decision. Rather, we should consider it only in the light of the standards set down as applied to the facts before us. The basic holding of *Solem v.*

*Helm,* —— U.S. ——, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), is that a criminal sentence must be proportionate to the crime for which the defendant has been convicted. However, at the same time, the Court said that "reviewing courts should give substantial deference to the *broad authority* that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the *discretion* that trial courts possess in sentencing convicted criminals." —— U.S. at ——, 103 S.Ct. at 3009 (emphasis added). It was pursuant to this broad authority that the legislature enacted the habitual offender statutes, and it was pursuant to his discretion that the circuit judge issued the life sentence.

The standards which the Supreme Court established in *Helm* for use in reviewing sentences are: 1) we must look to the gravity of the offense and harshness of the penalty; 2) we must compare sentences imposed on other criminals in the same jurisdiction; 3) we must compare sentences imposed for the same crime in other jurisdictions. Courts may also look to the harm caused to the victim or society and the defendant's motive. —— U.S. at ——, 103 S.Ct. at 3009.

A careful analysis of these standards shows that the trial court in the case at hand did not violate the standards, and thus Weiker's life sentence should be upheld. First, in looking at the gravity of the offense: whereas *Helm's* crime was called "one of the most passive felonies a person could commit," —— U.S. at ——, 103 S.Ct. at 3012, citing *State v. Helm,* 287 N.W.2d at 501 (Henderson, J., dissenting), Weiker's crime was drug dealing, a crime which destroys countless victims of all ages. As Justice Henderson stated in *State v. Pettis,* 333 N.W.2d 717, 720 (S.D.1983), "selling drugs is a harsh and unsavory business. Many drug dealers make handsome profits from their endeavors. Drug abuse has devastated countless American youth to include young South Dakotans. Drugs are a peril to our society." Weiker's "recipe box" shows that there were numerous vic-

tims of his crimes. A harsh penalty is fitting for such a harsh and destructive crime as drug-dealing.

Second, in comparing sentences imposed on other criminals in South Dakota, it is important to note that Weiker's prior felonies were all third-degree burglaries—class 4 felonies (SDCL 22–32–8). Burglary, even in the third degree, is considered by the legislature to be more serious than Helm's class 5 "no account check" felony, probably since burglary always involves the possibility of great harm to any individuals who might be within the burglarized premises. Drug dealing such as Weiker's is also a class 4 felony (SDCL 22–42–2). Therefore, all of Weiker's felonies are more serious than Helm's felony which was before the United States Supreme Court, and any criminal in South Dakota with Weiker's record could be sentenced to life in prison—a sentence established by the legislature within its "broad authority" to determine types of punishment.

Third, an examination of the sentences imposed in other jurisdictions for the same crime shows that drug dealers can get a life sentence in numerous states, either under habitual offender statutes like South Dakota's or under punishment statutes in controlled substance acts. *See* KAN. STAT.ANN. § 65–4127a (1980); MO.ANN. STAT. § 195.200 (Vernon 1983); MONT. CODE ANN. § 45–10–101(4) (1981); TEX. HEALTH & SAFETY CODE ANN. § 4476–15, 4.03 (Vernon 1982); UTAH CODE ANN. § 58–37–8(b)(1), (d); 76–8–1001 (1981). (These come from an examination of the codes of only a few states in the central U.S.) Therefore, South Dakota is not alone in enacting statutes giving harsh penalties, including life sentences, to drug dealers.

The United States Supreme Court has stated that we may also look to the harm caused to the victim or society. We know for a fact that drug abuse is on the rise, and the harm to victims and society is appalling. As noted by Justice Henderson in *Pettis,* supra, drug abuse has "devastated" countless Americans. A harsh sentence is certainly in order for those who directly cause such devastation.

The result of such a careful application of the *Helm* standards to the present case shows that *Helm* should not apply here. We are dealing with a more serious crime, a crime which destroys lives. Therefore, the sentence issued by the trial court is proportionate to the crime which Weiker committed.

The legislature last amended these statutes in 1977 after a year's study, volumes of statistics, and input from anyone interested. Until the legislature sees fit to repeal the Habitual Criminal Statutes, I do not feel that this court should "second guess" a trial judge on what sentence is "proportionate" to the crimes committed and as to whether there is still hope for rehabilitation. The legislature has spoken clearly on the subject and it is my opinion that the statutes pass constitutional muster. I would affirm.