**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Justin Lloyd BULT, Defendant and Appellant.**

No. 18820.

Supreme Court of South Dakota.

Submitted on Briefs Jan. 11, 1995.

Decided March 22, 1995.

Mark Barnett, Atty. Gen., Gary Campbell, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Michael J. Butler, Butler & Nesson, Sioux Falls, for defendant and appellant.

KONENKAMP, Justice.

In a prior appeal we reversed and remanded for resentencing, finding that under the facts of this case, a life sentence was cruel and unusual. After considering additional matters the sentencing court again imposed a life sentence. Again we remand for resentencing finding that the additional facts fail to justify a different result from our prior decision.

### FACTS

In 1983, Bult was convicted of sexual contact with a child under fifteen years of age and kidnapping. The trial court imposed the maximum sentence for both offenses: ten years for sexual contact and concurrent life imprisonment without the possibility of pa-role for kidnapping. On direct appeal, this Court unanimously affirmed his convictions. *State v. Bult*, 351 N.W.2d 731 (S.D.1984) (*Bult I*). The constitutionality of his life sentence was later challenged through a writ of habeas corpus. Concluding that the sentence shocked the conscience, we reversed and remanded for resentencing. *Bult v. Leapley*, 507 N.W.2d 325 (S.D.1993) (*Bult II*).

Bult originally denied the offenses, then confessed, then again denied any wrongdoing when he testified in his jury trial, but while in prison he admitted his guilt, completed a sex offender program and participated in other rehabilitative measures. His prison record over the past eleven years revealed him to be a generally well-behaved inmate with seven minor infractions. There were no incidents of violence, aggression, or threats.

At the resentencing hearing the court heard the testimony of two psychologists. The defense expert, Dr. Langenfeld, did not believe Bult was beyond rehabilitation and made several recommendations for continued incarceration with long-term, gradual reintegration into society. In his opinion, Bult suffered from Intermittent Explosive Disorder, which he characterized as being in remission. When asked to gauge Bult's chances for rehabilitation on a scale of one to ten Dr. Langenfeld responded,

> Boy, you know, that's tough. And I said uncertain, and I think with treatment, you know, I would say—I would have to put it in the middle. Maybe—with the right kind of treatment for a long enough period of time, I would lean toward [Bult] being able to handle himself without serious reoffending. So I would probably lean more in the positive direction, but I think the key is going to be the treatment.

Dr. Langenfeld also testified that although Bult suffered from a personality disorder, he was not a pedophile, a person fixated primarily on children for sexual gratification.

Similarly, the State's expert, Dr. Byrd, who never personally interviewed Bult, could not diagnose pedophilia, but would not rule it out. Dr. Byrd was less sanguine about Bult's prospects for rehabilitation than Dr. Langenfeld:

I really don't know how to put a time limit on the kind of therapy, or the length of time that [Bult] would need to be in treatment, group and individual. It may be that [Bult] may require being involved in some kind of ongoing counseling or therapy for the remainder of his adult life.

He explained, "The state of the art in terms of sex offender treatment is at this point in time, let alone what it was like in 1982, is such that we can only make best guesses really about the efficacy of the treatment programs." The sentencing court found Dr. Byrd's opinions more plausible and summarized his findings with respect to Dr. Byrd's testimony:

I accept Dr. Byrd's analysis that the chronic pattern of moderate depression of defendant is a risk factor for potential relapse; that distorted thinking on the part of sex offenders is related to self-pity which this defendant possesses; that it is of concern that the defendant targeted a child to vent his anger and aggression and did so in a sexual manner; and that the personality makeup and impulsive nature of this defendant is a significant risk to society. There is much more to this incident than the completion of a sexual act. Further, Dr. Byrd feels that the defendant may require ongoing counseling or therapy for the rest of his life.

Dr. Byrd thought the case warranted further study and time, but he neither expressed nor implied that Bult was beyond rehabilitation or that his problems were beyond the ability of an adequate treatment program to address. Overall, he was "not in profound disagreement" with Dr. Langenfeld.

The sentencing court also received handwritten notes from the victim, now seventeen years old, and her mother. They expressed understandable anguish and indignation over Bult's crime and fear that if he were released he might return and do further harm. The victim also wrote, "I don't think he should get out of jail yet, because he hasn't been there long enough for what he did."

After hearing the expert testimony, reviewing Bult's penitentiary record, reading the victim impact statements, and consulting a treatise on sentencing, the court again sentenced Bult to life in prison. The sentencing court explained his reasoning in a detailed memorandum, setting forth the competing factors a court uses to guide it in imposing to a fair sentence. The court specifically rejected Dr. Langenfeld's expert opinion that Bult was not a pedophile and also rejected his opinion that Bult's personality disorder was in remission. The sentencing court wrote:

His sexual propensities notwithstanding, the fact still remains that this defendant was sentenced to life imprisonment and remains there today because of the *kidnapping conviction,* not the sexual contact conviction. Dr. Byrd feels that the defendant could reoffend in this fashion or in some other violent fashion, and, as stated, I adopt this opinion and concern. AGAIN, THIS IS *NOT* JUST A SERIOUS CONCERN ABOUT THE DEFENDANT'S SEXUAL PROPENSITIES. IT IS ALSO A SERIOUS CONCERN ABOUT HIS PERSONALITY DEFECTS AND TENDENCIES. WHAT ARE WE BEING ASKED TO RELEASE ON SOCIETY? *THIS MAN IS UNPREDICTABLE AND DANGEROUS.*

Based on this record, I find that there is an unlikelihood of favorable response to any sexual treatment program and an unlikelihood of rehabilitation. I find that the recommended program for treatment and release is impractical and unfeasible. The program suggested is a "hoped for" plan of addressing defendant's personality defects and propensities, with no guarantees, replete with uncertainties, and presents extraordinarily high risks to the public. The reoffending possibilities are glaringly evident by virtue of the defendant's personality defects and tendencies and his inability to cope in society. (Emphasis original.)

In discussing the possibility for reoffending, the court in its sentence memorandum took judicial notice of recent news events, including a kidnapping and murder by a repeat offender in California and a kidnapping and rape of a four-year-old in a South Dakota community by a convicted rapist.

### DECISION

The sentencing court apparently found Bult's mental condition so gravely ab-

normal and his resultant proclivities so dangerous that only a lifetime institutional commitment would be sufficient to protect society. The court also concluded that rehabilitation was seemingly unattainable. Yet the record fails to confirm these conclusions. On the contrary, the experts only indicated that successful rehabilitation and release could not be in Bult's near future. Agreeing that further study and treatment were necessary, the experts disagreed about the time frame for gauging success. Indeed, the experts believed that even after eventual release, treatment may still be necessary, not that treatment was hopeless. Nevertheless, the sentencing court alluded to guarantees of successful rehabilitation. This Court noted in *Bult II*, "[I]t is apparent from its remarks at Bult's sentencing that the sentencing court believed that any person committing the crimes Bult was convicted of was beyond rehabilitation." *Id.* at 328. The sentencing judge did not deviate from that view at the second resentencing:

> Common sense tells you that trying to persuade a person who has perverted and unnatural sexual propensities to change would be like trying to persuade a normal adult person who has normal sexual desires for adult members of the opposite sex to change his/her sexual preferences.

Though neither expert ruled out successful rehabilitation, the sentencing court did. A sentencing judge is not bound by expert opinion on what is an appropriate sentence, of course, but a life sentence should only be imposed where the facts and previous convictions make rehabilitation so unlikely that the interests of society are best served by lifetime incarceration. *Bult II*, 507 N.W.2d at 327.

> [W]e recommend to the trial court that the maximum of life sentence be imposed only in such cases where it can determine from the facts of the principal offense and the previous convictions that rehabilitation is so unlikely as to be removed from consideration in sentencing; that the interests of society demand that the convict be kept off the streets for the rest of his life; and that society, speaking through the legislature, has clearly mandated that the offense or offenses involved are so malignant that a

lifetime of incarceration is the only adequate retribution.

*State v. Weiker*, 342 N.W.2d 7, 12 (S.D.1983) (*Weiker I*). Bult's case does not fit this profile.

■ At the time he committed these offenses Bult was an eighteen-year-old high school senior, with no prior felony convictions and no history of assaults on children or anyone else. The nature of his offenses, though abhorrent, did not merit life in prison. We share the sentencing court's concerns in wanting to remove from society violent, incorrigible offenders. Yet the court's reasons at resentencing were essentially the same as it expressed in *Bult II*, reasons which we found inadequate. No matter how much one may desire to prevent recurrence of criminal behavior in our crime-ridden society, a sentencing court must individually evaluate each offender in light of the required sentencing factors, including rehabilitation. *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). As we noted in *Bult II*, life imprisonment makes rehabilitation irrelevant.

■ We see no need to reiterate the constitutional analysis in *Bult II*. *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991); *State v. Gehrke*, 491 N.W.2d 421 (S.D.1992); *State v. Castaneira*, 502 N.W.2d 112 (S.D.1993). We simply repeat, this sentence shocks the conscience of humankind and this Court. A life sentence without possibility of parole cannot be imposed in this case. We remand again for resentencing, with instructions that the sentencing court shall impose an appropriate term of years. *See Weiker I*, 342 N.W.2d at 12.

Reversed and remanded.

MILLER, C.J. and SABERS and AMUNDSON, JJ., concur.